UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:14-cr-00335-KJD-CWH |
| Plaintiff, | |
| v. | |
| CHRISTOPHER WALKER, | **ORDER** |
| Defendant. | |

Presently before the court is pro se Defendant Christopher Walker's Motion to Suppress Based on Fourth Amendment Violation (ECF No. 137), filed on June 27, 2016, and the Government's Response (ECF No. 153), filed August 4, 2016. The Court conducted a hearing on August 15, 2016. (Minutes, (ECF No. 161).) The Government filed a Supplemental Brief Regarding the Motion to Suppress (ECF No. 164) on August 29, 2016, and Walker filed his response to the Supplement (ECF No. 167) on September 7, 2016.

**FACTS AND PROCEDURAL HISTORY**

Walker is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Walker previously filed a motion to suppress evidence based on the encounter with police that resulted in the seizure of the weapon that is the basis for that charge. (Mot. to Suppress (ECF No. 31).) The undersigned conducted a hearing and submitted to the District Judge a Report and Recommendation that the evidence not be suppressed. (Report and Recommendation (ECF No. 43).) Walker then requested that the evidentiary hearing be reopened (Motion to Reopen (ECF No. 55)), but he later withdrew that motion (Stipulation (ECF No. 61).) Walker then filed objections to the Report and Recommendation (ECF No. 65), but the District Judge adopted and affirmed the recommendation that the evidence not be suppressed. (Order (ECF No. 67).)

Walker subsequently assumed his own defense[1] and filed a second motion to suppress. (Mins. of Proceedings (ECF No. 94); Mot. to Suppress (ECF No. 95).) In his second motion to suppress, he argues that the search of his bag was without his consent, and without the consent of his girlfriend who accompanied him at the time of his arrest. Walker further argues that the seizure of marijuana from his bag was illegal, and therefore his arrest was illegal. Given that this issue was not previously addressed, the Court granted Walker's motion to reopen the evidentiary hearing (ECF No. 139) for the limited purpose of hearing evidence on the lawfulness of the search of Defendant's bag. *See* Order, (ECF No. 142).

In the Court's previous Report and Recommendation, the Court found that the clerk at a Rebel gas station in Las Vegas told Walker, who was carrying a pistol in the store, to leave the store. Because Walker reportedly did not leave as requested, the clerk made a 911 call to Metropolitan Police, and Officer Kaplan was dispatched to the store. *See* Report and Recommendation (ECF No. 43, at 1-2.).

The Court previously found, in pertinent part, that when Officer Kaplan arrived at the scene, he observed a man later identified as Walker in the store parking lot near a bus stop. As Officer Kaplan approached Walker, he noticed that Walker had a holster on his hip carrying an unconcealed pistol. Officer Kaplan testified that, at the time, he believed that he was investigating a possible assault with a deadly weapon because the store clerk was reportedly afraid of Walker brandishing or threatening people with a firearm, and arguing with the clerk when he was asked to leave. Officer Kaplan testified that with "officer safety" in mind, he detained and handcuffed Walker and seized Walker's firearm. *Id., at 2*. Walker identified himself as Victor Gerard and provided a date of birth. Walker had no written forms of identification, which was suspicious to Officer Kaplan. Officer Kaplan testified that he believed Walker was being untruthful about his identity. Within a minute, Officer Kaplan contacted dispatch to inquire about whether the name Victor Gerard had possible warrants, and he was advised that there were no pending warrants. *Id*. The Court found that under the circumstances, it was reasonable to temporarily detain Walker for the purposes of investigating

---

[1] During the hearing on August 15, 2016, Walker decided that he no longer desired to represent himself, and so standby counsel took over the defense.

the 911 complaint. *See id.*, at 4-7.  The Court further found that the length of the detention, about 25 minutes, was not unreasonable under the circumstances and did not convert the stop to an arrest. *Id.*, at 7-8.

At the second suppression hearing, Metropolitan Police Officer Anthony Gilbert testified that when he arrived at the scene, he immediately made contact with Walker's girlfriend, Mitzi Berry, near the bus stop because he believed she was the female reported in the 911 dispatch call who was with Walker.[2]  Officer Gilbert testified that he had no interaction with Walker, who was located with Officer Kaplan in the parking lot near the bus stop, about twenty-eight feet away.  Officer Gilbert testified that Ms. Berry had two backpacks in her possession, and that because of the nature of the 911 call, he was concerned about the contents of the backpacks.  He testified that Ms. Berry said the backpacks were hers and that she consented to the search the backpacks.  The search yielded marijuana and a smoking pipe.  Officer Gilbert further testified that Ms. Berry said that the marijuana and pipe belonged to Walker and that when Officer Kaplan returned to the parking lot (from conducting his investigation in the store), he told Officer Kaplan about the marijuana.

The Court previously found that Officer Kaplan entered the store, conducted his investigation, and decided that Walker had committed no crime in the store. *Id.*, at 8.  Upon learning about the marijuana, however, Officer Kaplan advised Walker his *Miranda* rights and spoke with Walker for about 10 to 15 minutes.  Walker admitted that the marijuana and pipe in the bag belonged to him and that he had been smoking marijuana twice a day for the last few years.  Walker was then arrested at 1155 hours for being a prohibited person in possession of a firearm, and in possession of marijuana and drug paraphernalia.  Walker was then transported to the Clark County Detention Center where his true identity and status as a convicted felon were discovered.

## ANALYSIS

The Court reopened the suppression hearing for the limited purpose of considering the evidence on the lawfulness of the search of Walker's bag.  Undisturbed are the Court's rulings that

---

[2] Officer Gilbert did not testify at the first suppression hearing.  Metro Police Officer Michael Dunn also testified at the second suppression hearing, and although he was at the scene, had no interactions with Walker, Ms. Berry, or the other officers, and so his testimony is not summarized because it is not relevant.

there was a lawful basis to detain Walker while Officer Kaplan investigated the 911 call by the storekeeper and that the delay in the investigation did not convert the *Terry* stop to a *de facto* arrest without probable cause.

Walker argues that the search of the backpack was without his consent, and without the consent or apparent authority of Ms. Berry, and therefore the seizure of the marijuana was illegal. He then argues that his arrest was illegal, and the evidence should be suppressed, although he does not identify precisely which evidence should be suppressed. The Government argues that Ms. Berry had apparent authority to consent to the search of the backpacks.[3] In its supplementary brief submitted after the hearing, the Government responds that Walker's arrest led to the discovery of his true identity, but identity cannot be suppressed.

In his supplement, Walker replies that because, according to the computer dispatch reports, Ms. Berry was under arrest for resisting arrest and there is no "consent to search" card in evidence, she could not have given consent to the search of the backpacks. Walker argues that this illegal search started a "chain of illegality" which made Walker's arrest illegal. For the same reason, Walker argues that his statements admitting the ownership of the drugs and paraphernalia should be suppressed. Finally, Walker argues that because it is not illegal to openly carry a firearm in Nevada, his arrest was illegal.

It is axiomatic that an individual seeking to exclude evidence allegedly obtained in violation of the Fourth Amendment must have standing to challenge the illegal conduct that led to the discovery of the evidence. *United States v. Pulliam*, 405 F.3d 782, 785-786 (9th Cir. 2005) (citing *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)) (finding defendant did not have standing to challenge the search of another individual's car in which he was a passenger and seizure of the gun found in the car did not violate his Fourth Amendment rights). "To invoke the protections of the Fourth Amendment, a person must show he had a 'legitimate expectation of privacy.'" *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000). To establish a legitimate expectation of privacy, a person

---

[3] The Government also objected to the second suppression hearing because Defendant's motion was untimely, and Defendant had the opportunity, but failed to make his arguments at the prior evidentiary hearing. The Court agreed that the motion was untimely, but nevertheless found good cause to reopen the hearing in order to ensure full consideration of Defendant's suppression motion.

must show (1) a subjective expectation of privacy (2) that society is prepared to recognize as objectively reasonable. *Id.* (quoting *Smith v. Maryland*, 442 U.S. 735 (1979)). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. Accordingly, "the proponent of the motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005) (citation omitted) (finding defendant failed to show he had reasonable expectation of privacy in laptop seized by police). Whether the defendant had a legitimate expectation of privacy in the place searched or the items seized is a "threshold question" that a defendant must answer before courts will "consider whether the search was reasonable." *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007).

Here, Walker has not provided any evidence of ownership of, or an expectation of privacy in, the searched backpack. According to the testimony of Lopaka Harris, the clerk in the store, Walker was carrying a backpack when he was in the store. Officer Gilbert testified that Ms. Berry had two bags in her possession. Walker eventually admitted ownership of the marijuana that was seized. Assuming that Walker owned or was using one of the two backpacks in Ms. Berry's possession, there was no evidence presented that the marijuana was discovered in Walker's backpack, as opposed to Ms. Berry's backpack. There is no evidence that Walker claimed ownership of the backpack that was searched – neither Ms. Berry nor Walker testified at the hearing. On the other hand, Officer Gilbert testified that when he arrived, Ms. Berry was in possession of two backpacks, that she said both were hers, and that she verbally consented to their search. Additionally, he testified that Ms. Berry, who was located twenty-eight feet away from Walker, gave him no indication that the bags did not belong to her. Walker has no standing to object if his marijuana was found in Ms. Berry's bag because Ms. Berry was free to consent to the search of her bag. Notwithstanding Walker's arguments that she could not have consented to the search because she was detained, or that there is no consent card to prove the voluntariness of her consent, Walker cannot object to the search of another person's property because he has no reasonable expectation of

privacy there. *See Pulliam,* 405 F.3d at 786. In the absence of such evidence, Walker has failed to demonstrate that he had a legitimate expectation of privacy in the searched bag. Therefore, he has no standing to challenge the search of the backpack where the marijuana was found.

Walker has made no argument that the *Miranda* warning he received from Officer Kaplan, after the marijuana was seized, were not legally sufficient. Walker's only argument to suppress his statement to Officer Kaplan (which admitted ownership and use of the marijuana) was that it is the fruits of the illegal search of Ms. Berry. Because he has not proved standing to object to the search of the backpack, his statement will not be suppressed as fruits of an illegal search. *See Wong Sun v. United States*, 371 U.S. 471 (1963)(holding that evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree.)

Walker argues that the use of an alias is not a basis for an arrest, and the court agrees. But Walker was not arrested for using an alias, or misrepresenting himself as being Victor Gerard, and that misrepresentation was not discovered until after Walker was arrested and had been transported to the detention center. Officer Kaplan testified that he arrested Walker for being a prohibited person in the possession of a firearm after Walker admitted using the marijuana. *See* NRS § 202.360 (A person shall not have in his possession a firearm if he is an unlawful user of any controlled substance). Walker advised Officer Kaplan that he had been smoking marijuana twice a day for the last two years. Walker makes no argument that this legal basis for his arrest was insufficient.

The Court also notes that the admissibility of the firearm is not related to the legality of the search of the backpacks. Assuming that Walker could establish that the seizure of the evidence from his backpack and his subsequent arrest were illegal, the marijuana, pipe, and perhaps Walker's incriminating statements to Officer Kaplan would be subject to suppression. But Walker is not charged with possession of marijuana, and the fact that he possessed or admitted using it is not relevant to the charge he is facing. Walker is charged with being a felon in possession of a firearm. Officer Kaplan seized the firearm upon his arrival when he confronted and detained Walker pending his investigation. Walker presents no cogent argument that the firearm itself, which was seized from his possession before the allegedly illegal search of the backpack, should be suppressed. The seizure of the firearm is an act independent from the subsequent alleged illegal search of the backpack or

illegal arrest.

The key incriminating evidence that was discovered as the result of Walker's arrest is his true identity and record as a convicted felon. The Supreme Court has clearly stated that the identity of a defendant in a criminal proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred. *Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039-1040 (1984) (citations omitted). *See also United States v. Orozco-Rico*, 589 F.2d 433, 435 (9th Cir. 1978) (ruling that there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other independent evidence.) Accordingly, even if Walker's arrest were illegal because of the illegal search of his backpack, as he argues, neither the firearm which was lawfully seized before the search, nor his identity and the fact that he is a formerly convicted felon should be suppressed.

## RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that Defendant Christopher Walker's Motion to Suppress Based on Fourth Amendment Violation (ECF No. 137) be **denied**.

## NOTICE

This Report and Recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this Report and Recommendation may file a written objection supported by points and authorities within fourteen days of being served with this Report and Recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: September 21, 2016.

_____
C.W. Hoffman, Jr.
United States Magistrate Judge